JOHN DARRIN SAWYER, APPELLANT, V.
STATE SURETY COMPANY, A CORPORATION, APPELLEE.
558 N.W.2d 43

Filed January 10, 1997.   No. S-94-1085.

James C. Stecker, of Robak and Stecker, for appellant.

Bradley D. Holtorf, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

John Darrin Sawyer (John D.) brought this action against State Surety Company to recover on a $20,000 guardian bond issued to his father, John R. Sawyer (John R.). Because John R. had filed for chapter 13 bankruptcy protection, the parties entered into a stipulation lifting the automatic stay in the bankruptcy court so that John D. could obtain a judgment against John R. in the district court for moneys owed. The stipulation provided that John D. would pursue the judgment against State Surety only. The district court dismissed this cause pursuant to Neb. Rev. Stat. § 30-2641(b) (Reissue 1995). We affirm, concluding that § 30-2641(b) prevents an obligee from pursuing a claim against a surety on a bond when the obligee has stipulated that no enforcement or collection action on the judgment will be taken against the primary obligor.

## BACKGROUND

The proceedings in the district court were conducted largely upon a stipulation of the facts. For this reason, the facts underlying the present dispute are essentially undisputed.

John D.'s mother died on October 28, 1981, leaving him the beneficiary of insurance benefits from IBM. To facilitate the payment of these funds, the Saunders County Court appointed John R., John D.'s father, guardian on April 9, 1984. Shortly thereafter, on April 19, John R. filed a bond with the county court in the amount of $20,000, with State Surety being the surety.

Between the years 1984 and 1986 inclusive, John R., as guardian, received moneys belonging to John D. In particular, John R. received $25,585 from insurance proceeds from IBM and $15,786 from Social Security. Despite the fact that these funds were payable directly to his son, John R. failed to pay these sums to John D. when he reached the age of majority on October 11, 1987.

On July 26, 1991, the county court ordered John R. to file a report accounting for all moneys he had received and expended as guardian for John D. An accounting was filed on November 7, 1991, with John D. filing objections on December 12. Before a hearing was held regarding the objections, John R., on April 15, 1992, filed a petition for relief in bankruptcy under chapter 13 of title 11 of the U.S. Code. A suggestion in bankruptcy was then filed by John R. in the county court 4 days later.

Both John D. and State Surety were listed as creditors in the bankruptcy petition. On or about June 9, 1992, John D. filed a proof of claim with the bankruptcy court. This claim was allowed in the sum of $41,370 and was classified as unsecured. Prior to the confirmation of a bankruptcy plan and the entry of any debt discharge, John D. filed a motion for relief from the automatic stay with the bankruptcy court in order to proceed with the accounting of the guardianship in the county court.

There was no contested hearing regarding the motion for relief. Instead, the parties entered into a stipulation whereby John R. agreed to a lifting of the automatic stay for the sole purpose of allowing John D. to obtain a judgment against him in the county court so that he could file an action against State Surety on the $20,000 bond. Paragraph 5 of the stipulation provides:

> That John Darrin Sawyer shall not be permitted to take any action against any property or any part of the estate of John R. Sawyer. That John Darrin Sawyer be granted the necessary authority and permission to proceed on an action against the bonding company, State Surety Company, so that such action and/or proceeding effectively may proceed and that John Darrin Sawyer may take all necessary action to obtain the judgment against John R. Sawyer so that said amount due John Darrin Sawyer may be finally determined in order that an action on the bond of State Surety Company may proceed in the appropriate District Court. *That in consideration for the Stipulation by John R. Sawyer to permit judgment to be entered against him in the matter of John Darrin Sawyer in the County Court of Saunders County, John Darrin Sawyer hereby provides his covenant against enforcements or collection*

*against John R. Sawyer personally and John Darrin Sawyer hereby agrees to use the judgment for the sole purpose of maintaining an action against State Surety on the bond.*

(Emphasis supplied.)

The bankruptcy court, pursuant to this stipulation, granted John D. relief from the automatic stay on January 8, 1993. John D. then moved the county court to enter a judgment by stipulation against John R. for $41,370. The county court granted John D.'s motion and entered judgment against John R. in the amount of $41,370.

Having received only $390 from John R., John D. filed this action against State Surety on August 30, 1993, seeking a $20,000 judgment on the surety bond. The district court, pursuant to § 30-2641(b), dismissed the action, holding that "an action against the primary obligator, John R. Sawyer, has been barred by adjudication or limitation and therefore no proceeding may be commenced against the surety, State Surety Company." John D. appeals.

## ASSIGNMENT OF ERROR

In this appeal, John D. alleges the district court decision is contrary to law and is not supported by the facts.

## STANDARD OF REVIEW

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *State v. Bundy*, 250 Neb. 213, 549 N.W.2d 122 (1996); *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996).

In a case in which the facts are stipulated, an appellate court reviews the case as if trying it originally in order to determine whether the facts warranted the judgment. *Jindra v. Clayton*, 247 Neb. 597, 529 N.W.2d 523 (1995); *Douglas Cty. Bank & Trust v. Stamper*, 244 Neb. 226, 505 N.W.2d 693 (1993).

## ANALYSIS

The question before us is whether a surety (State Surety) is released from liability on a guardian bond when the obligee

(John D.) stipulates that no action for collection or enforcement of a judgment will be pursued against the primary obligor (John R.) for moneys owed. The answer to this question is controlled by § 30-2641(b), which provides: "No proceeding may be commenced against the surety on any matter as to which an action or proceeding against the primary obligor is barred by adjudication or limitation." Thus, we must determine whether a stipulation not to enforce or collect on a judgment is an adjudication or limitation.

In this appeal, John D. essentially argues that the stipulation entered into by the parties does not act as a limitation or adjudication which prevents the bringing of an action against State Surety, because it was simply a means by which to lift the automatic stay in the bankruptcy court. John D. asserts that the term "limitation" as used in § 30-2641(b) refers to the statute of limitations for bringing an action, while the term "adjudication" as used in the statute should be interpreted to mean a proceeding to determine the liability of the guardian or prior proceeding against the surety. State Surety urges a more expansive interpretation of the term "adjudication" by arguing that the approval of the stipulation by the bankruptcy court and the reliance on it by the county court act as an "adjudication" for purposes of § 30-2641(b).

We note that this court has not determined an action against a surety within the confines of § 30-2641(b). We have, however, set forth general rules regarding the law of suretyship. In *Niklaus v. Phoenix Indemnity Co.*, 166 Neb. 438, 445, 89 N.W.2d 258, 262-63 (1958), suretyship was defined as

> a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default, or miscarriage of another, the principal. *The surety's obligation is not an original and direct one for the performance of his own act, but is accessory or collateral to the obligation contracted by the principal. It is of the essence of the surety's contract that there be a valid obligation.*

(Emphasis supplied.) Accord *Shipley v. Baillie*, 250 Neb. 88, 547 N.W.2d 711 (1996).

Inherent in the existence of any surety relationship is the requirement that the principal owe some obligation. The liability of the surety for the debt to the holder of the obligation *is no greater and no less than that of the principal. Niklaus v. Phoenix Indemnity Co., supra* (citing *Kroncke v. Madsen*, 56 Neb. 609, 77 N.W. 202 (1898)). See, also, *Coleman v. Beck*, 142 Neb. 13, 5 N.W.2d 104 (1942) (surety released if creditor releases principal debtor without the knowledge of surety).

We conclude that the underlying rationale of these principles is clearly embodied within § 30-2641(b). The obvious mandate of § 30-2641(b) is that an obligation must exist against the primary obligor before an action can be commenced against the surety. If a proceeding against the primary obligor is barred, by adjudication or limitation, the same necessarily holds true for the surety. In other words, an action against a surety on a guardian bond cannot be maintained if the same action cannot be taken against the primary obligor because of an adjudication or limitation.

In the instant case, John D., by stipulation, has agreed not to enforce or collect on a judgment against John R., the primary obligor, for moneys owed. In approving this stipulation, the bankruptcy court lifted the automatic stay, thereby allowing John D. to pursue a judgment against John R. in county court. Seeking this relief was appropriate, for "no action may be maintained on a guardian's bond until the amount due thereon has been ascertained and judgment therefor entered." *Sherwood v. Merchants Mut. Bonding Co.*, 193 Neb. 262, 263, 226 N.W.2d 761, 762 (1975). With the stipulation, John D. was successful in receiving a $41,370 judgment against John R. in the Saunders County Court.

Quite apparent from the stipulation between the parties is the fact that no enforcement or collection action will be commenced against John R. for the $41,370. Thus, the sole question before us is whether the approval of this stipulation by the bankruptcy court and the county court for Saunders County is to be considered a limitation or adjudication for purposes of § 30-2641(b).

The term "adjudication" is not defined within the probate code, nor has this court had occasion to fashion a judicial defi-

nition of the term. We are mindful, however, that a court, in construing a statute, must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *In re Interest of Jaycox*, 250 Neb. 697, 551 N.W.2d 9 (1996); *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 550 N.W.2d 913 (1996). With this understanding, we note that "adjudication" is defined in Black's Law Dictionary 42 (6th ed. 1990) as "[t]he legal process of resolving a dispute. The formal giving or pronouncing a judgment or decree in a court proceeding; also the judgment or decision given."

The stipulation between John D. and John R. specifically stated that John D. "shall not be permitted to take any action against any property or any part of the estate of John R. Sawyer." John D. also provided his covenant "against enforcements or collection against John R. Sawyer personally . . . ." We conclude that the approval of this stipulation by the bankruptcy court was an adjudication, for it clearly resolved the dispute between the parties regarding John R.'s personal liability to John D. for moneys owed. In addition, the judgment entered against John R. in the county court relied on the acceptance of the stipulation. Implicit in the county court's judgment, therefore, is the inability of John D. to pursue the judgment against John R. directly. As such, this judgment also amounts to an adjudication, for it resolves the dispute between the parties in that it effectively bars the commencement of a collection action against John R.

The result of these two adjudications is clear; John R. owes no obligation on the debt owed to John D. To hold State Surety liable on its bond because a judgment was entered against John R. would exalt form over substance, because the essence of a principal-surety relationship is the existence of a valid obligation. *Niklaus v. Phoenix Indemnity Co.*, 166 Neb. 438, 89 N.W.2d 258 (1958). Since the two adjudications that took place establish that John R. is under no obligation to John D., it must necessarily follow that State Surety is also under no obligation. We therefore conclude, as did the district court, that § 30-2641(b) prevents John D. from maintaining this current action against State Surety.

## CONCLUSION

The stipulation between John D. and John R., as approved by the bankruptcy court and relied upon by the Saunders County Court, acts as an adjudication that effectively bars the commencement of an action against John R. Thus, the district court was correct in concluding that § 30-2641(b) prevents the commencement of the same claim against State Surety as surety on the bond.

AFFIRMED.

FAHRNBRUCH, J., concurs in the result.

LANPHIER, J., dissenting.

I respectfully dissent. The majority states that the adoption by the bankruptcy court of the stipulation between John D. and John R. is an adjudication which bars recovery against the surety under Neb. Rev. Stat. § 30-2641 (Reissue 1995). That section, however, simply codifies a general principle of suretyship law. The principle states that the surety's liability to the holder of the obligation is no greater and no less than that of the principal. *Niklaus v. Phoenix Indemnity Co.*, 166 Neb. 438, 89 N.W.2d 258 (1958).

The reference to "adjudication" or "limitation" under § 30-2641(b) refers to claims barred by a statute of limitations or a proceeding in which it was determined that the principal was *not* liable. In the present case, no issue of statute of limitations exists. Similarly, we do not have an adjudication determining that the principal is not liable. Rather, this case involves two separate adjudications, one by the bankruptcy court allowing the son's claim, and the judgment by the county court in favor of the son against his father, the principal. Both determined the principal *was* liable. The liability of the surety is dependent on the liability of the principal. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994). The fact that *recovery* cannot be had against the principal is why a surety bond was posted in the first place. To endorse the majority's reading of this statute is to render meaningless the very purpose of the principal-surety relationship.

WHITE, C.J., joins in this dissent.