BANK OF PAPILLION, A NEBRASKA BANKING CORPORATION, APPELLEE, V. KY THI NGUYEN AND KHOI DINH HOANG, APPELLANTS.

567 N.W.2d 166

Filed August 1, 1997.   No. S-95-1152.

Donald C. Hosford, Jr., of Crossman & Hosford, for appellants.

James C. Cripe for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

Defendants-appellants, Ky Thi Nguyen and Khoi Dinh Hoang, filed an appeal from a deficiency judgment under the Nebraska Trust Deeds Act (Act), Neb. Rev. Stat. §§ 76-1001 to 76-1018 (Reissue 1990, Cum. Supp. 1992 & Supp. 1993), entered by the district court for Douglas County in favor of the plaintiff-appellee, Bank of Papillion (Bank). Because we determine that the deficiency claim was barred by the statute of limitations set forth in § 76-1013, we reverse the judgment and remand the cause to the district court with directions to dismiss.

## FACTS

On November 20, 1990, appellants (and two other individuals who are not parties to this action) executed a promissory note in the amount of $74,040.64 payable to the Bank. On April 14, 1992, appellants executed a trust deed for the purpose of securing the note, which at that time had an unpaid balance of $64,234.89. The real property subject to the trust deed was a

residence owned by appellants. The final payment of principal and interest on the note secured by the trust deed was due by April 20, 1995.

The trust deed designated the Bank as both "trustee" and "beneficiary." As trustee, the Bank was given the power of sale upon default in the payment of the indebtedness secured by the trust deed. The power of sale provision specifically authorized the beneficiary to purchase the property at a public sale conducted by the trustee. The trust deed was recorded on May 7, 1992, in the office of the register of deeds for Douglas County.

After executing the trust deed, appellants made irregular payments on the promissory note until January 1994, when their payments ceased. As of that date, the outstanding balance on the note secured by the trust deed was $50,313.05.

In its capacity as trustee, the Bank exercised the power of sale contained in the trust deed. The sale occurred on May 24, 1994. The Bank submitted the only bid, which was in the amount of $52,427.60. On May 27, a trustee's deed was filed with the Douglas County register of deeds whereby the Bank, in its capacity as trustee, conveyed the real property subject to the trust deed to itself. The trustee's deed contained the following recitations:

> [I]n compliance with Sec. 76-1008, Statutes of Nebraska, on the 7th day of March, 1994, the Trustee filed a Notice of Default in the Office of the Register of Deeds of Douglas County, Nebraska, as noted at Book 1113, Page 229, which Notice fully complied with the requirements of said Statute; and
>
> . . . in compliance with Sec. 76-1008, Statutes of Nebraska, on the 10th day of March, 1994, the Trustee mailed by certified mail, with postage prepaid, a copy of such Notice of Default with the recording date shown thereon, addressed to KHOI HOANG and KY NGUYEN, at 2122 N. 121st Street, Omaha, Nebraska 68164; and
>
> . . . in compliance with Sec. 76-1007, Statutes of Nebraska, the Trustee gave written notice of the time and place of sale, particularly describing the property to be sold by publication of such notice on April 12, 1994, and continuing once each week for five (5) consecutive weeks,

the last publication being at least ten (10) days, but not more than thirty (30) days, prior to the date of such sale in The Daily Record, a newspaper, which fully complied with the requirements of said Statute; and

. . . in compliance with Sec. 76-1008, Statutes of Nebraska, on the 13th day of April, 1994, the Trustor [sic] mailed by certified mail, with postage prepaid, a copy of the notice of the time and place of sale, addressed to KHOI HOANG and KY NGUYEN, at 2122 N. 121st Street, Omaha, Nebraska 68164[.]

The trustee's deed further recited that the sale was held on May 24, 1994, and that the Bank submitted the highest bid in the amount of $52,427.60.

The Bank considered the amount of its bid on the May 24, 1994, sale to be the balance due on the note which it "bid in," and therefore made no cash payment. The Bank then regarded itself as the "title owner" as a result of the sale. On June 1, the Bank paid off a prior lien in the amount of $10,675.66 and added that amount to the balance due from appellants. During the remainder of that month, the Bank obtained an appraisal, cleaned the property and removed debris, erected a "For Sale By Owner" sign, and showed the property to prospective purchasers. As a result of its efforts to sell the property, the Bank obtained purchase offers in the amounts of $36,000 and $40,000 and accepted the latter. The fair market value as determined by the appraiser was $41,000.

On August 10, 1994, the Bank, ostensibly acting in the capacity of trustee, executed a "Corrective Trustee's Deed" conveying the same real property to the "BANK OF PAPILLION." This document was similar to the original trustee's deed dated May 24, 1994, in that it recited the filing of a notice of default on March 7, the mailing of a copy of that notice to appellants on March 10, and the sale of the property to the Bank for $52,427.60. However, the "Corrective Trustee's Deed" differed from the earlier trustee's deed in three respects: (1) It recited that the public sale occurred on August 8, instead of May 24; (2) it recited that notice of the sale was published for 5 weeks beginning on June 28, instead of April 12; and (3) it recited that a copy of the notice was mailed to appellants on July 5 instead

of April 13. This document was recorded on August 11. An officer of the Bank testified that the "Corrective Trustee's Deed" and the August 8 sale reflected therein were necessitated by a "technical problem with a notice that occurred in or about August of 1994." However, the specific nature of that "problem" is not disclosed in the record.

The evidence received at trial includes two certified mail receipts reflecting delivery of mail to "Ky Nguyen" and "Khoi Hoang" at 2122 N. 121 St., Omaha, NE 68164 on March 12 and July 7, 1994. The receipts show that the mail was sent by the attorney who represents the Bank in these proceedings, but there is nothing in the record to identify what documents were actually delivered on these dates. Appellant Khoi Dinh Hoang testified that he did not receive any notice of default or notice of sale. Appellant Ky Thi Nguyen did not testify. There is nothing in the record to indicate that either appellant sought to invalidate the May 24, 1994, sale because of inadequate notice.

On or about September 7, 1994, the Bank sold the property to a third party for $40,000. On November 4, 1994, the Bank filed a petition in the district court for Douglas County, naming Ky Thi Nguyen and Khoi Dinh Hoang as defendants and sought a deficiency judgment in the amount of $25,706.57. After a demurrer to the original petition was sustained, the Bank filed an amended petition on January 24, 1995, which contained the same substantive allegations as the original petition but attached a copy of the trust deed and the promissory note.

Appellants filed an answer on January 31, 1995, which consisted of a general denial and an allegation that the action was "barred by the applicable statute of limitations." A bench trial was held on August 31.

In a ruling from the bench immediately following trial, the district court found that the operative date of sale under the Act was September 7, 1994, the date when the property was sold by the Bank to a third party. The court then determined that the Bank was entitled to a deficiency judgment in the amount of $25,196.47, calculated by taking the principal balance on the note of $50,313.05 and subtracting "late charges" of $155, to which the court held that the Bank was not entitled; subtracting the amount of $30,324.34, representing the stipulated fair mar-

ket value of $41,000 less the $10,675.66 paid by the Bank to clear the first lien; and adding $1,643.39 in expenses and $3,719.37 in interest. The judgment was entered on the record on August 31, 1995.

After their motion for new trial was overruled on October 6, 1995, appellants perfected a timely appeal to the Nebraska Court of Appeals. Pursuant to our authority to regulate the caseloads of the Court of Appeals and this court, we removed this case to our docket.

## ASSIGNMENTS OF ERROR

Restated, appellants contend the district court erred in (1) failing to determine that the Bank made an inadequate pleading against them, (2) failing to conclude that the applicable statute of limitations barred the Bank's action against them, (3) incorrectly determining the date of sale of the property held under a trust deed in this matter, (4) failing to consider the sale price of the property held under the trust deed in computing the deficiency judgment, and (5) including certain expenses in the deficiency judgment.

## SCOPE OF REVIEW

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Metropolitan Utilities Dist. v. Balka,* ante p. 172, 560 N.W.2d 795 (1997); *In re Estate of Muchemore, ante* p. 119, 560 N.W.2d 477 (1997).

The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly erroneous. *Zion Wheel Baptist Church v. Herzog,* 249 Neb. 352, 543 N.W.2d 445 (1996).

## ANALYSIS

This case is governed by the Act, which controls the use of deeds of trust in this state. See *Douglas Cty. Bank & Trust v. Stamper,* 244 Neb. 226, 505 N.W.2d 693 (1993). The Act provides two methods of foreclosing a trust deed. The trustee may

exercise the power of sale conferred by the trust deed or the beneficiary may foreclose in the same manner as provided by law for the foreclosure of mortgages. *PSB Credit Servs. v. Rich*, 251 Neb. 474, 558 N.W.2d 295 (1997). See, also, § 76-1005.

In this case, the Bank, as trustee, chose to exercise the power of sale conferred by the trust deed. In *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 774, 497 N.W.2d 38, 42 (1993) (quoting *Blair Co. v. American Savings Co.*, 184 Neb. 557, 169 N.W.2d 292 (1969)), we summarized this power as follows:

> "The Nebraska Trust Deeds Act . . . authorizes the use of trust deeds to secure the performance of obligations and prescribes, generally, the procedures for their execution and enforcement. The act provides that a trust deed may confer a power of sale upon the trustee. In the event of a default, the trust property may be sold by the trustee to satisfy the obligation secured. The act also provides for the substitution of trustees, reinstatement after default, and the procedure for the sale and conveyance of the trust property by the trustee.
>
> . . . .
>
> "The Nebraska Trust Deeds Act authorizes the use of a security device which was not available prior to its enactment. The act permits the use of an instrument which may be foreclosed by sale without the necessity of judicial proceedings. It authorizes and permits a method of financing which was not formerly available, since trust deeds have been considered to be subject to the same rules and restrictions as mortgages. [Citation omitted.] The act is complete in that it prescribes in detail the procedures to be followed in the execution and enforcement of trust deeds."

In *Meginnis*, we determined that § 76-1013 establishes the limitations period for "an action to recover a deficiency on any obligation, such as a promissory note or other contract, after sale of the real estate which secured the obligation pursuant to the Nebraska Trust Deeds Act." 242 Neb. at 775, 497 N.W.2d at 43. Section 76-1013 provides in relevant part: "At any time *within three months after any sale of property under a trust deed*, as hereinabove provided, an action may be commenced to

recover the balance due upon the obligation for which the trust deed was given as security . . . ." (Emphasis supplied.)

In this case, the pivotal issue is the date on which the "sale of property under a trust deed" occurred, because that is the date on which the 3-month limitations period began to run. The district court found that the sale under the trust deed occurred on September 7, 1994, the date the Bank sold the property to a third party for $40,000. We conclude that this finding was clearly erroneous. The phrase "sale of property under a trust deed" contained in § 76-1013 clearly refers to the exercise of the power of sale conferred by the trust deed upon the trustee pursuant to the statutory authority contained in § 76-1005. Under § 76-1003, a bank may be both the trustee and the beneficiary of a trust deed. Under § 76-1009, the beneficiary may bid at the public sale conducted by the trustee. Thus, when a bank which is both the trustee and beneficiary under a trust deed submits the highest bid at a public auction conducted pursuant to the Act, the resulting conveyance from the bank *as trustee* to the bank *as purchaser* constitutes the "sale of property under a trust deed" from which the 3-month limitations period is computed pursuant to § 76-1013. Any subsequent sale to a third party who did not bid at the public sale is not a "sale of property under a trust deed," but, rather, a sale by the party who acquired the property at such a sale.

We must, therefore, decide whether the sale under the trust deed occurred on May 24, 1994, the date of the initial sale and execution of the original trustee's deed, or on August 8, 1994, the date of the second sale and execution of the "Corrective Trustee's Deed." On its face, the trustee's deed executed on May 24 and recorded 3 days later conveyed legal title to the property which had been secured by the trust deed. The trustee's deed specifically recites that the trustee "sold said property at public auction to the BANK OF PAPILLION" at the public sale on May 24. The fact that no money changed hands in this transaction is not controlling, because the Bank was both the seller and purchaser in its different capacities as trustee and beneficiary. Under these circumstances, no actual payment of the bid price would have been required. The law does not require the doing

of a useless act. *Drain v. Board of Ed. of Frontier Cty.*, 244 Neb. 551, 508 N.W.2d 255 (1993).

By virtue of the May 24, 1994, trustee's deed, the Bank no longer held title to the property as trustee, but, rather, as the fee simple owner. A property owner holding property in fee simple is permitted to freely alienate any part of the property. *Gustin v. Scheele*, 250 Neb. 269, 549 N.W.2d 135 (1996).

There is uncontroverted evidence that the Bank considered itself the fee simple owner of the property upon receipt and recording of the original trustee's deed. John Schmid, the only employee of the Bank who testified at trial, stated that the Bank became "title owners" of the property after the May 24, 1994, sale. He testified that during June 1994, the Bank arranged for an appraisal, paid off a prior lien on the property in the amount of $10,675.66, cleaned the property and removed debris in preparation for sale, and placed a sign on the front lawn stating "For Sale By Owner." Schmid further testified that he personally showed the property to prospective purchasers and obtained two offers to purchase the property, one of which was accepted by the Bank.

Schmid testified that due to a "technical problem with the notice," a second public sale occurred on August 8, 1994. The record does not disclose the nature of this "problem," nor is there any evidence that appellants sought to invalidate the May 24, 1994, trustee's sale because of any deficiency in notice. The trustee's deed executed on May 24 contained specific recitals of compliance with notice requirements set forth in the Act. These recitals constituted "prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice." § 76-1010(1). Thus, during the period from May 27, when the original trustee's deed was recorded, until September 7, when the property was sold to a third party, the Bank was the fee simple owner of record in actual possession of the property. Anyone examining the public records or visiting the property during this period would have been placed on notice of the Bank's ownership.

Under these facts, we hold that for purposes of § 76-1013, the "sale of property under a trust deed" occurred on May 24, 1994, and that the petition for a deficiency judgment filed on

November 4, 1994, was outside the 3-month limitations period and thus barred. Because the August 8, 1994, sale at which the Bank purported to resell the property to itself was conducted unilaterally by the Bank for reasons which are not apparent from the record, it cannot be used to extend the 3-month period in which the Bank was required to file its deficiency action.

Because our holding on the statute of limitations issue is dispositive, we do not address appellants' other assignments of error. We, therefore, reverse the judgment of the district court and remand the cause with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

WHITE, C.J., concurring.

I agree with the opinion of the majority. I write separately to simply point out that on the date of the sale, the outstanding balance on the note secured by the trust deed was $50,313.05. In its capacity as trustee, the Bank exercised the power of sale contained in the trust deed and purchased the property with a bid of $52,427.60, an amount which is admittedly in excess of the total indebtedness due the Bank.

There is no basis in fact for the recovery of a deficiency, since the sale price was in excess of the debt.

MCCORMACK, J., joins in this concurrence.