JASON BLAIR, APPELLANT AND CROSS-APPELLEE, V. STATE FARM INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT.

DALE E. PRICKETT, PERSONAL REPRESENTATIVE OF THE ESTATE OF TRACI A. PRICKETT, DECEASED, APPELLANT AND CROSS-APPELLEE, V. STATE FARM INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT.

DANIEL R. KOST, SR., PERSONAL REPRESENTATIVE OF THE ESTATE OF DANIEL R. KOST, JR., DECEASED, APPELLANT AND CROSS-APPELLEE, V. STATE FARM INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT.

697 N.W.2d 266

Filed May 27, 2005. Nos. S-04-280, S-04-308, S-04-325.

Jeff Lapin, of Friedman Law Offices, for appellant Jason Blair.

Robert F. Bartle, of Bartle & Geier Law Firm, for appellant Dale E. Prickett.

William D. Sutter, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellant Daniel R. Kost, Sr.

Cathy S. Trent, Stephen L. Ahl, and Melanie J. Whittamore-Mantzios, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

After running a red light, an underinsured driver struck Marcelle A. DeWitt's vehicle. Jason Blair, the driver of DeWitt's vehicle, was injured, and Daniel R. Kost, Jr., and Traci A. Prickett, passengers in the vehicle, were killed. The automobile liability policy that insured DeWitt's vehicle, issued by State Farm Insurance Company (State Farm), did not provide underinsured motorist (UIM) coverage. But Blair and the personal representatives of the estates of Kost and Prickett (collectively the appellants) sued State Farm, alleging that Neb. Rev. Stat. § 44-6408 (Reissue 2004) required the policy to provide such coverage. Section 44-6408(1) requires an automobile liability insurance policy to provide UIM coverage if the policy is "delivered, issued for delivery, or renewed with respect to any motor vehicle principally garaged in [Nebraska]." The district court granted summary judgment for State Farm.

We hold that under § 44-6408, when an insurer delivers, issues for delivery, or renews an automobile liability policy, the policy must provide UIM coverage if Nebraska is the state where the insured intends to keep the vehicle most often compared to any other state during the policy period. Because a fact question exists whether—when her parents renewed the policy—Nebraska was the state where DeWitt intended to keep her vehicle most often compared to any other state during the policy period, we remand the cause for further proceedings.

## BACKGROUND

DeWitt is a resident of Wyoming, but attended college in Nebraska from 1997 to 2000. In December 1999, DeWitt loaned her vehicle to her boyfriend. Her boyfriend went to a dance club

with Blair, Kost, and Prickett. After leaving the club, DeWitt's boyfriend decided that he had drunk too much to drive safely and asked Blair to drive DeWitt's vehicle. Blair agreed. As they were proceeding through an intersection, the driver of another vehicle, who was fleeing police, ran a red light and crashed into DeWitt's vehicle. Kost and Prickett were killed, and Blair suffered serious injuries. We note that DeWitt's boyfriend was also injured in the collision, but is not a party to this appeal.

At the time of the collision, State Farm provided automobile liability insurance to DeWitt under a policy issued to her parents, who live in Wyoming. According to the parties, Wyoming, unlike Nebraska, does not require UIM coverage, and it is undisputed that the State Farm policy did not expressly provide for UIM coverage.

Following the collision, the negligent driver's insurer paid the appellants the limits of the driver's policy. But according to the appellants, this did not completely compensate them for their injuries. So, each commenced actions against State Farm. In support of their claims, the appellants relied on § 44-6408. They alleged that DeWitt's vehicle was principally garaged in Nebraska and that as a result, State Farm was required to provide UIM coverage.

### MOVEMENT OF VEHICLE

Because the focus of the dispute is on where DeWitt's vehicle was principally garaged, it is necessary to review where DeWitt spent time and where her vehicle was located in 1999. As noted, DeWitt attended college in Nebraska from 1997 to 2000. She estimated that while attending college, she would typically spend 200 days per year in Nebraska. The only periods when she was not in Nebraska were holidays and summers.

During the spring of 1999, DeWitt purchased the vehicle in Lincoln, Nebraska. She did not register her vehicle in Nebraska. But according to DeWitt, in May 1999, after purchasing the vehicle, her mother informed the family's State Farm insurance agent that DeWitt was using the vehicle in Nebraska. DeWitt testified that she believed her mother had filled out a form sent to the family by State Farm.

In June 1999, DeWitt's family renewed the insurance policy. The declarations page sent to them at the time of renewal states

that the policy period was from June 17, 1999, to February 10, 2000.

At the time of the renewal, neither DeWitt nor the vehicle was in Nebraska. Instead, DeWitt had the vehicle with her in New York, where she worked as a nanny over her 1999 summer break. DeWitt did not know if anyone had notified State Farm that the vehicle would be in New York during the summer of 1999. When the nanny job ended, DeWitt returned to Nebraska for the fall 1999 semester. She remained in Nebraska until December 2000.

### DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT

State Farm moved for summary judgment in each case. The cases were consolidated for the purposes of the motion.

In support of its motion, State Farm made two arguments. First, it argued that under § 44-6408, the place where a vehicle is principally garaged is the same as the insured's domicile, and that because DeWitt was domiciled in Wyoming, Nebraska law did not require that the policy provide UIM coverage. Second, State Farm argued that in the alternative, the place where DeWitt's vehicle was principally garaged was the place it was being kept at the time that the policy was renewed. According to State Farm, because the vehicle was in New York when the policy was renewed, New York was the place it was principally garaged and therefore, State Farm was not required to provide UIM coverage.

Initially, the court denied summary judgment. But after State Farm moved for reconsideration, the court adopted State Farm's second argument and granted it summary judgment.

### ASSIGNMENTS OF ERROR

The appellants assign that the district court erred in granting summary judgment to State Farm.

On cross-appeal, State Farm assigns that the district court erred in failing to conclude that a vehicle is principally garaged in the same place as the insured's domicile.

### STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that

may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Dworak v. Farmers Ins. Exch., ante* p. 386, 693 N.W.2d 522 (2005).

■ Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Destiny 98 TD v. Miodowski, ante* p. 427, 693 N.W.2d 278 (2005).

## ANALYSIS

We first note that the case does not require us to resolve a conflict between the law of Nebraska and the law of Wyoming. The parties agree that Nebraska law, specifically § 44-6408, controls whether State Farm was required to provide UIM coverage. Thus, we turn to that statute.

Section 44-6408 provides:

> (1) No policy insuring against liability imposed by law for bodily injury, sickness, disease, or death suffered by a natural person arising out of the ownership, operation, maintenance, or use of a motor vehicle within the United States, its territories or possessions, or Canada *shall be delivered, issued for delivery, or renewed with respect to any motor vehicle principally garaged in this state* unless coverage is provided for the protection of persons insured who are legally entitled to recover compensatory damages for bodily injury, sickness, disease, or death from . . . (b) the owner or operator of an underinsured motor vehicle in limits of twenty-five thousand dollars because of bodily injury, sickness, disease, or death of one person in any one accident and, subject to such limit for one person, fifty thousand dollars because of bodily injury, sickness, disease, or death of two or more persons in any one accident.

(Emphasis supplied.) Whether § 44-6408 required State Farm to provide UIM coverage turns on how to interpret and apply the term "principally garaged."

### "Principally Garaged" as Place of Named Insured's Domicile

We begin by considering State Farm's cross-appeal. It argues that we should treat a vehicle as being principally garaged in the

same place as the named insured's domicile. This rule, however, is not consistent with the language of the statute. In choosing to make the UIM coverage requirement depend on where the "motor vehicle" is "principally garaged," the Legislature chose terms which placed the focus of the inquiry on the vehicle's location. But if we adopted State Farm's argument, the focus would not be on the location of the vehicle, but instead on the insured's physical presence and his or her intent to remain in that place. See *In re Estate of Craven*, 265 Neb. 41, 45, 654 N.W.2d 196, 199 (2002) ("domicile is obtained only through a person's physical presence accompanied by the present intention to remain indefinitely at a location or by the present intention to make a location the person's permanent or fixed home"). We cannot read a meaning into a statute that is not there, *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004), and thus, we do not adopt State Farm's domicile argument.

### "PRINCIPALLY GARAGED" AS STATE WHERE INSURED INTENDS TO KEEP VEHICLE MOST OFTEN DURING POLICY PERIOD

Instead of focusing on the named insured's domicile, we read "principally garaged" to mean where a vehicle is "primarily or chiefly kept." *Chalef v. Ryerson*, 277 N.J. Super. 22, 27, 648 A.2d 1139, 1141 (1994). In other words, a vehicle is principally garaged in the place where it is kept most often. This is consistent with the plain meaning of the words "principally" and "garaged."

Although the term "principally garaged" is not difficult to define, it is difficult to apply in a temporal context. To determine where a vehicle is kept most often, one must establish a defined period of time and then determine the place that the vehicle was located more often than any other place during that time period. The difficulty with § 44-6408 is that it does not clearly specify what defined period should be used to make this calculation.

The trial court concluded that the period for determining whether a vehicle is principally garaged in Nebraska is the period during which the policy was delivered, issued for delivery, or renewed. Here, the last of these three events was the policy's renewal in June 1999. Because it is undisputed that during this period, DeWitt had the vehicle with her in New York, the court concluded that State Farm was not required to provide UIM coverage and granted it summary judgment.

In contrast to the district court's interpretation, the appellants argue that the period to be used in determining where a vehicle is principally garaged is the period during which the policy will be in effect, i.e., the policy period. Thus, according to them, if an insurer delivers, issues for delivery, or renews a policy on a vehicle that the insured intends to keep in Nebraska most often compared to any other state during the policy period, the policy must contain UIM coverage. They argue that a fact question exists whether—when DeWitt's parents renewed the policy—Nebraska was the state where she intended to keep her vehicle most often compared to any other state during the policy period.

We believe that the appellants' argument is the better position because under the district court's reading of § 44-6408, the UIM coverage requirement hinges on happenstance. Two examples demonstrate this point. First, suppose that a resident of Nebraska drives to Wyoming for a 2-week vacation. During that 2-week vacation, the Nebraska resident renews her automobile liability policy. Under the district court's interpretation of § 44-6408, the policy would not be required to contain UIM coverage because during the period when the policy was renewed, the Nebraska resident kept the vehicle exclusively in Wyoming. This would be the result even if the insured intended to keep her vehicle in Nebraska for the remaining 50 weeks during which the policy would be in effect.

Second, assume a resident of Wyoming vacations in Nebraska for 2 weeks and renews her insurance during this period. Under the district court's interpretation of § 44-6408, the policy would be required to provide UIM coverage even if the insured intended to keep her vehicle in Wyoming for the remaining 50 weeks of the policy period. We doubt the Legislature intended to adopt a law which would cause such erratic results. See *Nicholson v. General Cas. Co. of Wis.*, 262 Neb. 879, 883, 636 N.W.2d 372, 376 (2001) ("appellate court will, if possible, try to avoid a statutory construction which would lead to absurd results").

The appellants' interpretation of § 44-6408, in contrast to the district court's interpretation, results in a system more likely to reflect the legitimate expectations of both insureds and insurers. Instead of focusing on the location of the vehicle at the exact moment the policy is delivered, issued, or renewed, it focuses on

what state the vehicle will be kept most often during the policy period. If the insured intends to keep the vehicle in Nebraska more often than in any other state, then the policy must comply with the UIM requirement. Therefore, we hold that under § 44-6408, when an insurer delivers, issues for delivery, or renews an automobile liability policy, the policy must provide UIM coverage if Nebraska is the state where the insured intends to keep the vehicle most often compared to any other state during the policy period. Consequently, the district court's grant of summary judgment to State Farm was based on an incorrect interpretation of § 44-6408.

## RESOLUTION

Next, we must decide whether the grant of summary judgment can be justified under our interpretation of § 44-6408. The State Farm policy was renewed in June 1999. The policy states the policy period was from June 17, 1999, to February 10, 2000. Thus, summary judgment for State Farm cannot be justified if there is some evidence showing that—at the time the policy was renewed—Nebraska was the state where DeWitt intended to keep her vehicle most often compared to any other state during the policy period. That evidence exists. DeWitt's deposition testimony suggests that at the time the policy was renewed, she intended to spend most of the time during the policy period attending college in Nebraska and that while doing so, she would keep the vehicle with her. Therefore, the court erred in granting summary judgment to State Farm.

## CONCLUSION

We reverse the district court's grant of summary judgment to State Farm and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

GERRARD and STEPHAN, JJ., not participating.

WRIGHT, J., concurring in the result.

I concur in the result. Neb. Rev. Stat. § 44-6408(1) (Reissue 2004) makes reference to "any motor vehicle principally garaged in this state." As the majority has stated, the term "principally garaged" is not difficult to define, but it makes the application of § 44-6408 difficult.

The requirement for underinsured motor vehicle coverage should be based upon where the vehicle is principally *operated* rather than where it is principally *garaged*, because it is the operation of the vehicle that creates the need for underinsured motor vehicle coverage.